1  ROBBINS UMEDA LLP
    BRIAN J. ROBBINS (190264)
2  brobbins@robbinsumeda.com
    CRAIG W. SMITH (164886)
3  gsmith@robbinsumeda.com
    SHANE P. SANDERS (237146)
4  ssanders@robbinsumeda.com
    GINA STASSI (261263)
5  gstassi@robbinsumeda.com
    600 B Street, Suite 1900
6  San Diego, CA 92101
    Telephone: (619) 525-3990
7  Facsimile: (619) 525-3991

8  Attorneys for Plaintiff

**FILED**

JUL 0 6 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

9  UNITED STATES DISTRICT COURT

10  NORTHERN DISTRICT OF CALIFORNIA

11  SAN JOSE DIVISION

**PSG**

12

13  IRON WORKERS MID-SOUTH PENSION
    FUND, Derivatively on Behalf of YAHOO! INC.,

14                 Plaintiff,

15      vs.

16  CAROL BARTZ, JERRY YANG, ROY J.
    BOSTOCK, PATTI S. HART, SUSAN M.
    JAMES, VYOMESH JOSHI, ARTHUR H.
17  KERN, BRAD D. SMITH, GARY L. WILSON,
    and JACK MA,

18

19                 Defendants,

20      -and-

21  YAHOO! INC., a Delaware corporation,

22              Nominal Defendant.

Case No. **CV-11-03302**

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT FOR
BREACH OF FIDUCIARY DUTY,
UNJUST ENRICHMENT, WASTE OF
CORPORATE ASSETS, AND
VIOLATIONS OF CALIFORNIA
CORPORATIONS CODE

DEMAND FOR JURY TRIAL

23

24

25

26

27

28

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

**BY FAX**

1.     This is a shareholder derivative action brought by plaintiff, a shareholder of Yahoo! Inc. ("Yahoo" or the "Company"), on behalf of the Company against certain of its officers and directors for breaches of fiduciary duties and violations of law. These wrongs resulted in millions of dollars in damages to Yahoo's reputation, goodwill, and standing in the business community. Moreover, these actions have exposed the Company to millions of dollars in potential liability for violations of federal law. Most notably, however, is that the actions of the Individual Defendants (as defined herein) have cost the Company an asset worth billions of dollars.

2.     The matter arises out of the Chief Executive Officer ("CEO") of Alibaba Group Holding Limited ("Alibaba"), defendant Jack Ma's ("Ma"), transfer of Alibaba's valuable e-commerce payment system, Alipay, to another entity he controlled. Alibaba is China's largest e-commerce Company, and Alipay is the method that customers purchase goods (similar to eBay Inc.'s PayPal function in the United States). Alipay is a necessary part of Alibaba, and some analysts have valued it at $5 billion. Despite its tremendous value, according to reports, defendant Ma paid Alibaba only $46 million for Alipay.

3.     Though Alibaba is a separate Company, Yahoo acquired a 40% stake in it for $1 billion in 2005. Defendant Ma's acquisition of Alipay has been disastrous for Yahoo. In addition, in exchange for this $1 billion investment, Yahoo received the right to name two members to Alibaba's board of directors, though for reasons that remain unexplained, it only named one, Yahoo's founder, defendant Jerry Yang ("Yang").

4.     While Yahoo has seen its importance in the U.S. market diminish, Alibaba has exploded. In fact, Alibaba is now Yahoo's most valuable corporate asset, accounting for as much as two-thirds of Yahoo's entire $21 billion market capitalization. Defendant Ma's acquisition of Alibaba's $5 billion asset for a de minimis sum has had a direct and immediate impact on Yahoo. Since Yahoo has revealed Alipay's ownership transfer, the Company's market capitalization has fallen by $3.5 billion, or 15%. That defendant Ma was able to accomplish this scheme is a testament to Yahoo's woefully inadequate internal control systems and failure of the members of

1  the Company's Board of Directors (the "Board") to act in accordance with their duties of loyalty
2  to protect Yahoo's valuable assets.

3      5.      Just as bad as defendant Ma's self-dealing ownership transfer, however, is the
4  manner in which the Board members have treated their duty of candor to the Company's
5  shareholders. Despite Alibaba's board of directors learning about the ownership transfer in July
6  of 2009, Yahoo made no mention of it until an almost hidden disclosure in a quarterly report
7  filed with the U.S. Securities Exchange Commission ("SEC") in May 2011. By Yahoo's own
8  admission, the Company learned about Ma's ownership transfer on March 31, 2011, (and
9  according to Alibaba, actually learned about it much earlier). Nevertheless, three weeks later,
10  the Company announced positive quarterly results without mentioning the Alipay ownership
11  transfer. In short, the Board was aware of Ma's planned misappropriation of Alipay, failed to
12  prevent the usurpation of Yahoo's valuable financial interest in Alipay, and then concealed the
13  entire ugly episode from Yahoo shareholders. Further, as a result of the Individual Defendants'
14  actions, the Company is being sued by an investor in a securities fraud class action.

15      6.      According to reports, Yahoo and Alibaba have reached an agreement on the
16  ownership transfer of Alipay. Instead of demanding the return of Alipay to Alibaba, as would be
17  expected, defendant Ma will instead promise not use Alipay to hurt the value of Taobao, an
18  Alibaba owned e-commerce website. This promise hardly compensates Yahoo for the damage
19  Ma has caused the Company.[1] It is now apparently clear that the Board will not act to protect the
20  Company. Accordingly, plaintiff now brings this action to remedy the harms caused by the
21  Individual Defendants.

22

23

24

25  [1] These reports also stated that defendant Ma's controlled company which now owns Alipay
26  "*could also include plans* for Mr. Ma's new company to further compensate Alibaba Group for
    the Alipay transfer, in part to take into consideration future revenue from processing fees it
27  extracts from websites other than Taobao."

28

## JURISDICTION AND VENUE

7. This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332(a) in that plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Defendants are citizens of California, Nevada, New York, and China. Plaintiff is not a citizen of any of these states and is not a citizen of a foreign country. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

8. This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to Yahoo, occurred in this District.

## INTRADISTRICT ASSIGNMENT

10. A substantial portion of the transactions and wrongdoings which give rise to the claims in this action occurred in the county of Santa Clara, and as such, this action is properly assigned to the San Jose division of this Court.

## THE PARTIES

11. Plaintiff Iron Workers Mid-South Pension Fund purchased Yahoo stock on June 8, 2010, and has continuously been a shareholder since that time. Plaintiff is a citizen of Oklahoma, Louisiana, Mississippi, and Texas.

12. Nominal defendant Yahoo is a Delaware corporation with principal executive offices located at 701 First Avenue, Sunnyvale, California. Yahoo is a leading digital media Company that delivers personalized digital content and experiences, across devices and around

1   the globe, to vast audiences. Yahoo provides engaging and innovative canvases for advertisers
2   and online properties and services to users.

3       13.   Defendant Carol Bartz ("Bartz") is Yahoo's CEO and a director and has been
4   since January 2009. Bartz is also Yahoo's President and has been since April 2009. Bartz
5   knowingly, recklessly, or with gross negligence: (i) made improper statements regarding the
6   Company's business health, operations, and future; and (ii) failed to implement an effective
7   system of internal and financial controls to ensure the Company's assets, in particular its most
8   valuable asset, Alibaba, were protected. Finally, on information and belief, Bartz has agreed in
9   principle to an arrangement with defendant Ma that would not result in him returning Alipay to
10   Alibaba or him paying Alibaba fair value for Alipay. Bartz is named as a defendant in a
11   securities class action complaint that alleges she violated sections 10(b) and 20(a) of the
12   Securities Exchange Act of 1934. Bartz is a citizen of California.

13       14.   Defendant Yang is a Yahoo director and has been since March 1995. Yang was
14   also Yahoo's CEO Officer from June 2007 to January 2009. Yang co-founded Yahoo in 1994.
15   Yang is also a director of Alibaba, a privately-held Company which manages investments in
16   several Asia-based Internet businesses, and has been since 2005. Yang knowingly or recklessly:
17   (i) made improper statements regarding the Company's business health, operations, and future;
18   and (ii) failed to implement an effective system of internal and financial controls to ensure the
19   Company's assets, in particular its most valuable asset, Alibaba, were protected. Finally, on
20   information and belief, Yang has agreed to principle to an arrangement with defendant Ma that
21   would not result in him returning Alipay to Alibaba or him paying Alibaba fair value for Alipay.
22   Yang is also named as a defendant in a securities class action complaint that alleges he violated
23   sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Yang is a citizen of California.

24       15.   Defendant Roy J. Bostock ("Bostock") is Yahoo's Chairman of the Board and has
25   been since January 2008 and a director and has been since May 2003. Bostock knowingly or
26   recklessly: (i) made improper statements regarding the Company's business health, operations,
27   and future; and (ii) failed to implement an effective system of internal and financial controls to
28   ensure the Company's assets, in particular its most valuable asset, Alibaba, were protected.

- 4 -

1  Finally, on information and belief, Bostock has agreed in principle to an arrangement with
2  defendant Ma that would not result in him returning Alipay to Alibaba or him paying Alibaba
3  fair value for Alipay. Bostock is a citizen of New York.

4      16.    Defendant Patti S. Hart ("Hart") is a Yahoo director and has been since June
5  2010. Hart is also a member of Yahoo's Audit Committee and has been since June 2010. Hart
6  knowingly or recklessly: (i) made improper statements regarding the Company's business health,
7  operations, and future; and (ii) failed to implement an effective system of internal and financial
8  controls to ensure the Company's assets, in particular its most valuable asset, Alibaba, were
9  protected. Finally, on information and belief, Hart has agreed in principle to an arrangement
10 with defendant Ma that would not result in him returning Alipay to Alibaba or him paying
11 Alibaba fair value for Alipay. Hart is a citizen of Nevada.

12     17.    Defendant Susan M. James ("James") is a Yahoo director and has been since
13 January 2010. James is also Chair of Yahoo's Audit Committee and has been since January
14 2010. James knowingly or recklessly: (i) made improper statements regarding the Company's
15 business health, operations, and future; and (ii) failed to implement an effective system of
16 internal and financial controls to ensure the Company's assets, in particular its most valuable
17 asset, Alibaba, were protected. Finally, on information and belief, James has agreed in principle
18 to an arrangement with defendant Ma that would not result in him returning Alipay to Alibaba or
19 him paying Alibaba fair value for Alipay. James is a citizen of California.

20     18.    Defendant Vyomesh Joshi ("Joshi") is a Yahoo director and has been since July
21 2005. Joshi is also a member of Yahoo's Audit Committee and has been since at least June 2008
22 and a member of the Transactions and Strategic Planning Committee and has been since at least
23 April 2011. Joshi knowingly or recklessly: (i) made improper statements regarding the
24 Company's business health, operations, and future; and (ii) failed to implement an effective
25 system of internal and financial controls to ensure the Company's assets, in particular its most
26 valuable asset, Alibaba, were protected. Finally, on information and belief, Joshi has agreed in
27 principle to an arrangement with defendant Ma that would not result in him returning Alipay to
28 Alibaba or him paying Alibaba fair value for Alipay. Joshi is a citizen of California.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

19.     Defendant Arthur H. Kern ("Kern") is a Yahoo director and has been since January 1996. Kern knowingly or recklessly: (i) made improper statements regarding the Company's business health, operations, and future; and (ii) failed to implement an effective system of internal and financial controls to ensure the Company's assets, in particular its most valuable asset, Alibaba, were protected. Finally, on information and belief, Kern has agreed in principle to an arrangement with defendant Ma that would not result in him returning Alipay to Alibaba or him paying Alibaba fair value for Alipay. Kern is a citizen of California.

20.     Defendant Brad D. Smith ("Smith") is a Yahoo director and has been since June 2010. Smith is also a member of Yahoo's Transactions and Strategic Planning Committee and has been since at least April 2011. Smith knowingly or recklessly: (i) made improper statements regarding the Company's business health, operations, and future; and (ii) failed to implement an effective system of internal and financial controls to ensure the Company's assets, in particular its most valuable asset, Alibaba, were protected. Finally, on information and belief, Smith has agreed in principle to an arrangement with defendant Ma that would not result in him returning Alipay to Alibaba or him paying Alibaba fair value for Alipay. Smith is a citizen of California.

21.     Defendant Gary L. Wilson ("Wilson") is a Yahoo director and has been since November 2001. Wilson is also a member of Yahoo's Audit Committee and has been since at least June 2008. Wilson knowingly or recklessly: (i) made improper statements regarding the Company's business health, operations, and future; and (ii) failed to implement an effective system of internal and financial controls to ensure the Company's assets, in particular its most valuable asset, Alibaba, were protected. Finally, on information and belief, Wilson has agreed in principle to an arrangement with defendant Ma that would not result in him returning Alipay to Alibaba or him paying Alibaba fair value for Alipay. Wilson is a citizen of California.

22.     Defendant Ma is Alibaba's Chairman and CEO and has been since 1999. Ma is also a director of SOFTBANK Corp. ("SOFTBANK"), a leading digital information Company and investor in Alibaba, and has been since June 2007. Defendant Ma caused Alibaba to transfer its entire equity interest in Alipay to another private Company he controlled for only $46 million.

1   By doing so, Ma usurped Alibaba's interest in Alipay and Yahoo's valuable financial interest in
2   Alipay at a blatantly inadequate and unfair price. Ma is a citizen of China.

3       23.     The defendants identified in ¶¶13-14 are referred to herein as the "Officer
4   Defendants."   The defendants identified in ¶¶13-21 are referred to herein as the "Director
5   Defendants."   The defendants identified in ¶¶16-18, 21 are referred to herein as the "Audit
6   Committee Defendants."   The defendants identified in ¶¶13-21 are referred to herein as the
7   "Yahoo Defendants."   The defendants identified in ¶¶13-22 are referred to herein as the
8   "Individual Defendants."

9                          **DUTIES OF THE YAHOO DEFENDANTS**
10   **Fiduciary Duties**

11       24.     By reason of their positions as officers, directors, and/or fiduciaries of Yahoo and
12   because of their ability to control the business and corporate affairs of Yahoo, the Yahoo
13   Defendants owed and owe Yahoo and its shareholders fiduciary obligations of trust, loyalty,
14   good faith, and due care, and were and are required to use their utmost ability to control and
15   manage Yahoo in a fair, just, honest, and equitable manner. The Yahoo Defendants were and are
16   required to act in furtherance of the best interests of Yahoo and its shareholders so as to benefit
17   all shareholders equally and not in furtherance of their personal interest or benefit.

18       25.     Each officer and director of the Company owes to Yahoo and its shareholders the
19   fiduciary duty to exercise good faith and diligence in the administration of the affairs of the
20   Company and in the use and preservation of its property and assets, and the highest obligations
21   of fair dealing. In addition, as officers and/or directors of a publicly held company, the Yahoo
22   Defendants had a duty to promptly disseminate accurate and truthful information with regard to
23   the Company's operations, performance, management, projections, and forecasts so that the
24   market price of the Company's stock would be based on truthful and accurate information.

25   **Additional Duties of the Audit Committee Defendants**

26       26.     In addition to these duties, under the Company's Audit Committee Charter in
27   effect since at least 2010, the Audit Committee Defendants, Hart, James, Joshi, and Wilson,
28   owed specific duties to Yahoo to oversee the Company's accounting and financial reporting

process. In particular, the Audit Committee was and is charged with reviewing the Company's earnings press releases, guidance, and quarterly and annual financial statements.

27. The Audit Committee's Charter also expressly provides that the Audit Committee must review and discuss with management and the independent auditors, periodically, the following:

(a) all significant deficiencies in the design or operation of internal controls which could adversely affect the Company's ability to record, process, summarize, and report financial data, including any material weaknesses in internal controls identified by the Company's independent auditors;

(b) any fraud, whether or not material, that involves management or other employees who have a significant role in the Company's internal controls; and

(c) any significant changes in internal controls or in other factors that could significantly affect internal controls, including any corrective actions with regard to significant deficiencies and material weaknesses.

**Control, Access, and Authority**

28. The Yahoo Defendants, because of their positions of control and authority as officers and/or directors of Yahoo, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.

29. Because of their advisory, executive, managerial, and directorial positions with Yahoo, each of the Yahoo Defendants had access to adverse, non-public information about the financial condition, operations, and growth prospects of Yahoo. While in possession of this material, non-public information, the Yahoo Defendants made improper representations regarding the Company, including information regarding Yahoo's relationship with Alibaba and Alipay.

30. At all times relevant hereto, each of the Yahoo Defendants was the agent of each of the other Yahoo Defendants and of Yahoo, and was at all times acting within the course and scope of such agency.

**Reasonable and Prudent Supervision**

31.     To discharge their duties, the officers and directors of Yahoo were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company. By virtue of such duties, the officers and directors of Yahoo were required to, among other things:

(a)     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial health;

(b)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public;

(c)     refrain from acting upon material, inside corporate information to benefit themselves;

(d)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(e)     remain informed as to how Yahoo conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with securities laws; and

(f)     ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable laws, rules, and regulations.

**Breaches of Duties**

32.     Each Yahoo Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duty of loyalty and good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Yahoo Defendants complained of herein involves a knowing and culpable violation of their

- 9 -

obligations as officers and directors of Yahoo, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Yahoo Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Yahoo Defendants who were also officers and/or directors of the Company have been ratified by the remaining Yahoo Defendants who collectively comprised all of Yahoo's Board.

33.    The Yahoo Defendants breached their duty of loyalty and good faith by allowing defendants to cause, or by themselves causing, the Company to make improper statements. The Yahoo Defendants also failed to prevent the other Yahoo Defendants from taking such illegal actions. The Yahoo Defendants also breached their duty of loyalty by failing to properly monitor and set up internal controls to monitor the Company's most important asset, Alibaba. In addition, as a result of defendants' illegal actions and course of conduct, the Company is now the subject of a class action lawsuit that alleges violations of securities laws. As a result, Yahoo has expended, and will continue to expend, significant sums of money.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

34.    In committing the wrongful acts alleged herein, the Yahoo Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design. In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Yahoo Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

35.    During all times relevant hereto, the Yahoo Defendants, collectively and individually, initiated a course of conduct that was designed to and did: (i) deceive the investing public, including shareholders of Yahoo, regarding the Yahoo Defendants' management of Yahoo's operations; and (ii) enhance the Yahoo Defendants' executive and directorial positions at Yahoo and the profits, power, and prestige that the Yahoo Defendants enjoyed as a result of holding these positions. In furtherance of this plan, conspiracy, and course of conduct, the Yahoo Defendants, collectively and individually, took the actions set forth herein.

36. The Yahoo Defendants engaged in a conspiracy, common enterprise, and/or common course of conduct. During this time, the Yahoo Defendants caused the Company to issue improper financial statements.

37. The purpose and effect of the Yahoo Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Yahoo Defendants' violations of law, breaches of fiduciary duty, waste of corporate assets, and unjust enrichment; and to conceal adverse information concerning the Company's operations, financial condition, and future business prospects.

38. The Yahoo Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully or recklessly release improper statements. Because the actions described herein occurred under the authority of the Board, each of the Yahoo Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

39. Each of the Yahoo Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Yahoo Defendant acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## BACKGROUND ON YAHOO AND ALIBABA

40. Yahoo, based in Sunnyvale, California, is a global digital media Company. Despite its global brand, Yahoo's business has languished for the past several years, as the Company has largely failed to keep up with Google Inc. and struggled to grow in highly regulated and politicized fast-growing markets like China.

41. To overcome this situation, in 2005, Yahoo invested $1 billion for a 40% interest in Alibaba, China's largest e-commerce company, and one seat on Alibaba's four-person board of directors. As a part of their strategic partnership, Yahoo also turned over operation of Yahoo China to Alibaba. In a shareholder report discussing the Yahoo-Alibaba strategic partnership,

- 11 -

and heralding the transaction as a great opportunity for Yahoo to expand its business in China, Yahoo stated:

> Through this transaction, the Company has combined its leading search capabilities with Alibaba's leading online marketplace and online payment systems and Alibaba's strong local presence, expertise and vision in the China market. These factors contributed to a purchase price in excess of the Company's share of its fair value of Aliababa's net tangible and intangible assets acquired resulting in goodwill.

42.    As the remainder of the decade unfolded, Alibaba grew rapidly, but Yahoo not so much. Thus, by 2011, Yahoo's 40% stake in Alibaba had grown significantly in importance to Yahoo and, in fact, had become, according to many industry experts, Yahoo's most valuable corporate asset, accounting for as much as two-thirds of Yahoo's entire $21 billion market capitalization.

43.    For example, as famed hedge fund manager David Einhorn's Greenlight Capital wrote about Yahoo in April 2011, "[w]e would not be surprised if YHOO's 40% stake in Alibaba Group alone was ultimately worth YHOO's entire current market value." Greenlight Capital continued:

> We believe that Yahoo's most valuable asset is its 40% stake in Alibaba Group's still-private holdings, which are separate and distinct form its ownership in the publicly-traded Alibaba.com, which we are essentially getting for free ....

44.    Until recently, one of Alibaba's most profitable "still-private holdings" was Alipay, an e-commerce payment system similar to eBay Inc.'s PayPal. As China's economy grew rapidly during the late 2000s, so did Alipay's profits. According to U.S. securities analysts, including Brett Harriss of Gabelli & Co., Alipay is worth more than $5 billion. But most importantly for Yahoo and its shareholders, Yahoo, as Alibaba's largest shareholder, had a direct connection to the profits stemming from Alipay's fast-growing and lucrative online payment system.

45.    Doing business in China can be complex and difficult for U.S. companies. Yahoo's experience in China has been no different. But, unlike other large U.S. publicly traded companies, Yahoo's single most valuable corporate asset is an investment tied up in a foreign

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1  corporation located in China, more than 4,000 miles away from Yahoo's corporate headquarters
2  located in Sunnyvale, California.

3      46.     Because of this unique and delicate risk specific to Yahoo, the Yahoo Defendants,
4  as Yahoo's directors, owed the Company a fiduciary obligation to safeguard Yahoo's investment
5  in Alibaba and, at all times, to shield it against unnecessary risks of loss, including from
6  misappropriation of assets or usurpation of corporation opportunities by Alibaba's insiders,
7  including defendant Ma, Alibaba's Chairman and CEO. However, as detailed, below, the Yahoo
8  Defendants utterly failed to implement the internal controls and systems for protecting Yahoo's
9  material investment in Alibaba, with disastrous results for Yahoo and its shareholders.

10      **THE ALIPAY OWNERSHIP TRANSFER AND THE YAHOO DEFENDANTS'**
11                    **IMPROPER STATEMENTS**

12      47.     According to Alibaba, over the past three years the Alibaba board of directors
13  (which defendant Yang was a member) repeatedly discussed new regulatory requirements in
14  China that could require the transfer of Alipay into different ownership.  At a July 2009 Alibaba
15  board of director's meeting, Alibaba management told the board of directors that it would
16  transfer Alipay to Chinese ownership.  In August 2010, Alibaba transferred Alipay's equity to
17  another private Company controlled by defendant Ma by August 2010.  Thereafter, Alipay was
18  deconsolidated, leaving Alibaba without any ownership interest in Alipay, and Yahoo without
19  any connection to the profits stemming from Alipay's lucrative e-commerce payment system.
20  According to some reports, Ma paid Alibaba only $46 million for Alipay, despite its estimated
21  market value of $5 billion.

22      48.     Between at least August 2010 and April 2011, the Yahoo Defendants caused the
23  Company to issue a series of reports to shareholders that failed to disclose that defendant Ma
24  transferred Alibaba's ownership in Alipay to another private Company he controlled.  For
25  example, in Yahoo's SEC report on Form 10-Q for the quarter ended September 30, 2010, filed
26  on November 8, 2010, when discussing Yahoo's investment in Alibaba and its impact on Yahoo's
27  business, the Company stated:

28

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

*Equity Investment in Alibaba Group.* The investment in Alibaba Group Holding Limited ("Alibaba Group") is accounted for using the equity method, and the total investment, including net tangible assets, identifiable intangible assets and goodwill, is classified as part of investments in equity interests on the Company's condensed consolidated balance sheets. The Company records its share of the results of Alibaba Group, and its consolidated subsidiaries, and any related amortization expense, one quarter in arrears, within earnings in equity interests in the condensed consolidated statements of income.

\* \* \*

The loss from operations of $71 million for the nine months ended June 30, 2010 is primarily due to Alibaba Group's impairment loss of $192 million on goodwill related to the business that Yahoo! contributed to Alibaba Group. This impairment does not impact Yahoo!'s earnings in equity interests as Yahoo!'s investment balance related to this contributed business was carried over at cost and therefore Yahoo! has no basis in the impaired goodwill.

The Company also has commercial arrangements with Alibaba Group to provide technical, development, and advertising services. For the three and nine months ended September 30, 2009 and 2010, these transactions were not material.

49.     Similarly, in Yahoo's Annual Report on Form 10-K for the year ended December 31, 2010, filed with the SEC on February 28, 2011, defendants Bartz, Bostock, Hart, James, Joshi, Kern, Smith, Wilson, and Yang failed to disclose any facts regarding the transfer of Alipay from Alibaba by defendant Ma. Instead, in the 2010 Form 10-K stated:

*Equity Investment in Alibaba Group.* On October 23, 2005, the Company acquired approximately 46 percent of the outstanding common stock of Alibaba Group, which represented approximately 40 percent on a fully diluted basis, in exchange for $1.0 billion in cash, the contribution of the Company's China-based businesses, including 3721 Network Software Company Limited ("Yahoo! China"), and direct transaction costs of $8 million. Another investor in Alibaba Group is SOFTBANK. Alibaba Group is a privately-held Company. Through its investment in Alibaba Group, the Company has combined its search capabilities with Alibaba Group's leading online marketplace and online payment system and Alibaba Group's strong local presence, expertise, and vision in the China market. These factors contributed to a purchase price in excess of the Company's share of the fair value of Alibaba Group's net tangible and intangible assets acquired resulting in goodwill.

The investment in Alibaba Group is being accounted for using the equity method, and the total investment, including net tangible assets, identifiable intangible assets and goodwill, is classified as part of investments in equity interests on the Company's consolidated balance sheets. The Company records its share of the results of Alibaba Group and any related amortization expense, one quarter in

- 14 -

arrears, within earnings in equity interests in the consolidated statements of income.

The Company's initial purchase price was based on acquiring a 40 percent equity interest in Alibaba Group on a fully diluted basis; however, the Company acquired a 46 percent interest based on outstanding shares. In allocating the initial excess of the carrying value of the investment in Alibaba Group over its proportionate share of the net assets of Alibaba Group, the Company allocated a portion of the excess to goodwill to account for the estimated reductions in the carrying value of the investment in Alibaba that may occur as the Company's equity interest is diluted to 40 percent. As of December 31, 2009 and 2010, the Company's ownership interest in Alibaba Group was approximately 44 percent and 43 percent, respectively.

In the initial public offering ("IPO") of Alibaba.com on November 6, 2007, Alibaba Group sold an approximate 27 percent interest in Alibaba.com through the issuance of new Alibaba.com shares, the sale of previously held shares in Alibaba.com, and the exchange of certain Alibaba Group shares previously held by Alibaba Group employees for shares in Alibaba.com, resulting in a gain on disposal of interests in Alibaba.com. Accordingly, in the first quarter of 2008, the Company recorded a non-cash gain of $401 million, net of tax, within earnings in equity interests representing the Company's share of Alibaba Group's gain, and the Company's ownership interest in Alibaba Group increased approximately 1 percent from 43 percent to 44 percent.

\* \* \*

Since acquiring its interest in Alibaba Group, the Company has recorded, in retained earnings, cumulative earnings in equity interests of $308 million and $350 million, respectively as of December 31, 2009 and 2010.

The Company also has commercial arrangements with Alibaba Group to provide technical, development, and advertising services. For the years ended December 31, 2009 and 2010, these transactions were not material.

Equity Investment in Alibaba.com Limited. As part of the IPO of Alibaba.com, the Company purchased an approximate 1 percent interest in the common stock of Alibaba.com. This investment was accounted for using the equity method, consistent with the Company's investment in Alibaba Group, which holds the controlling interest in Alibaba.com. In September 2009, the Company sold its direct investment in Alibaba.com for net proceeds of $145 million and recorded a pre-tax gain of $98 million in other income, net.

50.     On April 19, 2011, Yahoo issued a press release announcing its first quarter 2011 financial results. The Company reported earnings of $223 million, or $0.17 diluted earnings per

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

share, and revenue of $1,064 million. Notably absent from these were positive results was any mention of defendant Ma's transfer of Alipay.

### DEFENDANT MA'S TRANSFER OF ALIPAY TO HIMSELF IS REVEALED

51. On May 10, 2011, Yahoo revealed, buried in the text of its Quarterly Report on Form 10-Q for the quarter ended March 31, 2011, that "the ownership of Alibaba Group's online payment business, Alipay, was restructured so that 100 percent of its outstanding shares are held by a Chinese domestic Company which is majority owned by Alibaba Group's chief executive officer, [defendant Ma]."

52. On this news, the trading price of Yahoo shares collapsed, wiping out more than $3 billion in valuable shareholders' equity, as shareholders feared that Yahoo's stake in Alibaba could be weakened by the misappropriation of Alipay by defendant Ma. Yahoo's shareholders' equity still has not recovered.

53. On May 12, 2011, Yahoo issued a press release entitled "Yahoo! Inc. Releases Statement Regarding Alipay." It was in this press release that the Company revealed that it knew about the Alipay ownership transfer since at least March 31, 2011, almost three weeks before the Company announced its positive first quarter financial results. In particular, the press release stated:

> On March 31, 2011, Yahoo! and SOFTBANK were notified by Alibaba Group of two transactions that occurred without the knowledge or approval of the Alibaba Group board of directors or shareholders. The first was the transfer of ownership of Alipay in August 2010. The second was the deconsolidation of Alipay effective in the first quarter of 2011.
>
> Yahoo! disclosed this restructuring in its 10-Q after discussions with Alibaba Group and obtaining a better understanding of this complex situation.
>
> Yahoo! continues to work closely with Alibaba and Softbank to protect economic value for all interested parties. We believe ongoing negotiations among all of the parties provide the best opportunity to achieve an outcome in the best interest of all stakeholders.

54. Alibaba responded to Yahoo's press release on May 13, 2011, refuting the allegation that the Yahoo Board was surprised by the Alipay ownership transfer. In particular, Alibaba stated that its board of directors had been meeting over the past three years to discuss

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Alipay's ownership structure, and was told in *July 2009* that Alipay would be transferred to Chinese ownership. The press release stated:

> Alibaba Group management has taken actions to comply with Chinese law governing payment companies in order to secure a license to continue operating Alipay. The Alibaba Group board discussed at numerous board meetings over the past three years the impending imposition of new regulatory requirements on the online payment industry, including ownership structures, as they were being developed in China, and was told in a July 2009 board meeting that majority shareholding in Alipay had been transferred into Chinese ownership. The actions taken by Alibaba Group management to comply with the licensing regulations and to ensure continuation of operations are in the best interests of the Company and its shareholders. The continued operation of Alipay is essential to the preservation and enhancement of the value of Alibaba Group's businesses such as Taobao, as Alipay is the payments platform for e-commerce in these businesses.

55.     On May 15, 2011, Yahoo issued a press release entitled "Joint Statement from Alibaba Group and Yahoo! Inc. Regarding Alipay," which stated in part:

> "Alibaba Group, and its major stockholders Yahoo! Inc. and Softbank Corporation, are engaged in and committed to productive negotiations to resolve the outstanding issues related to Alipay in a manner that serves the interests of all shareholders as soon as possible."

56.     Stunned by the Alipay transfer, Yahoo shareholders and financial analysts alike questioned why the Yahoo Defendants had not paid closer attention to the possible change in ownership of Alipay over the years and why the Yahoo Defendants elected not to detail the situation in its April 2011 earnings press release call. For example, on May 13, 2011, *The Wall Street Journal* quoted Stifel, Nicolaus & Company analyst Jordan Rohan stating:

> "If Yahoo knew of this transaction yet failed to disclose it, for whatever reason, investors could lose faith in other Yahoo disclosures," Stifel Nicolaus analyst Jordan Rohan said in a note to clients. "If Yahoo did not know about it, trust issues loom even larger, as one could conclude that other material transactions may have occurred and were not disclosed."

57.     Similarly, on May 23, 2011, *Bloomberg* quoted Gamco Investors Inc. portfolio manager Larry Haverty stating:

> If an asset disappears, that's a risk…. This disappearance apparently took place long before it was announced. That would indicate to me the corporation's risk-control procedures, which are a board responsibility, were not operating in the way that they should have.

58.     On May 31, 2011, reports began to surface that Yahoo and defendant Ma reached an agreement in principle over the ownership transfer of Alipay. According to these reports, as part of the resolution, Alibaba and Ma would promise not to hurt the value of Taobao, an e-commerce site owned by Alibaba. In addition, the resolution may include plans for the Ma-controlled entity to provide some sort of additional compensation to Alibaba for the Alipay transfer. This agreement, as reported, is woefully in adequate to compensate Yahoo for the billions of dollars in lost in the Alipay transfer or the billions of dollars in liability it now faces.

### DAMAGES TO YAHOO

59.     As a result of the Individual Defendants' improprieties, Yahoo disseminated improper public statements concerning its business health and prospects, in light of the loss of its ownership in Alipay. These improper statements have devastated Yahoo's credibility as reflected by the Company's $3.57 billion, or almost 15%, market capitalization loss.

60.     Further, as a direct and proximate result of the Individual Defendants' actions, Yahoo has expended, and will continue to expend, significant sums of money, including costs incurred from defending and paying any settlement in the class action for violations of federal securities laws and benefits and bonuses paid to the Yahoo Defendants even while they were breaching their fiduciary duties to the Company.

61.     Finally, Alibaba reportedly only received $46 million for an asset worth $5 billion. Based on Yahoo's 40% ownership interest in Alibaba, the Company has lost an asset worth $2 billion to it.

### DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

62.     Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

63.     Plaintiff brings this action derivatively in the right and for the benefit of Yahoo to redress injuries suffered, and to be suffered, by Yahoo as a direct result of the breaches of fiduciary duty, gross mismanagement, abuse of control, waste of corporate assets, and unjust

1  enrichment, as well as the aiding and abetting thereof, by the Yahoo Defendants. Yahoo is
2  named as a nominal defendant solely in a derivative capacity.

3      64.    Plaintiff will adequately and fairly represent the interests of Yahoo in enforcing
4  and prosecuting its rights.

5      65.    Plaintiff was a Yahoo shareholder at the time of the wrongdoing of which he
6  complains, and is currently a Yahoo shareholder

7      66.    At the time plaintiff filed this case, the Board of Yahoo consisted of the following
8  ten individuals: David Kenny, and defendants Bartz, Bostock, Hart, James, Joshi, Kern, Smith,
9  Wilson, and Yang. Plaintiff has not made any demand on the present Board to institute this
10  action because such a demand would be a futile, wasteful, and useless act, as set forth below.

11      67.    Defendants Bartz, Bostock, Hart, James, Joshi, Kern, Smith, Wilson, and Yang
12  have known about defendant Ma's transfer of Alipay to himself from Alibaba since at least
13  March 31, 2011, yet have not instituted litigation against Ma. Further, according to reports,
14  Yahoo has reached an agreement in principle with Ma over the Alipay transfer that does not
15  involve him returning it to Alibaba, and on information and belief, the potential payment he is
16  considering is not close to the actual value of Alipay. Rather, the main consideration defendant
17  Ma is offering is merely a promise not to hurt one of Alibaba's other key assets, Taobao, an
18  obligation Ma is already under since he is CEO of Alibaba. In other words, the Board is set to
19  allow Ma to essentially take a $5 billion asset from Alibaba in exchange for a promise to do
20  something he is already required to do. The Board's decision to essentially give away an asset
21  worth billions of dollars is not a decision protected by the business judgment rule and
22  demonstrates the futility of making a demand upon the Board.

23      68.    In addition to being the founder and "Chief Yahoo!" of the Company, defendant
24  Yang sits on the Board of Alibaba. Over the past three years, Yang was told about new
25  regulatory requirements in China concerning the online payment industry regarding ownership
26  structure of the payment entities during Board meetings. On information and belief, the potential
27  transfer of Alipay to defendant Ma was discussed at these meetings. Moreover, at the July 2009
28  Alibaba board of directors meeting, Alibaba informed its directors, including Yang, about the

- 19 -

1 decision to transfer Alipay ownership to Ma. Nevertheless, he did not disclose the Alipay
2 transfer to the public and made improper statements concerning the Company's business for
3 almost two years. Therefore, Yang faces a substantial likelihood of liability, raising a reasonable
4 doubt about his ability to disinterestedly consider a demand.

5      69.    Moreover, defendant Yang, as Yahoo's representative on the Alibaba board of
6 directors was charged with monitoring Alibaba and its largest asset, Alipay. Thus, Yang had a
7 strict fiduciary duty to ensure that Yahoo's best interests were being represented by the Alibaba
8 board of directors. Nevertheless, Yang oversaw Alibaba's transfer of its $5 billion asset to
9 defendant Ma for only $46 million. This complete abdication of duties subjects Yang to a
10 substantial likelihood of liability; raising a reasonable doubt about his ability to disinterestedly
11 consider a demand.

12      70.    Demand is futile as to defendant Bartz because she faces a substantial likelihood
13 of liability. Defendant Bartz, as the Company's CEO and President was ultimately responsible
14 for the Company's operations, financial statements, and internal controls. As detailed herein,
15 Bartz, however, made a number of improper statements concerning the Company's business
16 health and prospects that failed to reveal defendant Ma's self-dealing transfer of Alipay to
17 himself. Instead, Bartz continued to present Yahoo's investment in Alibaba as if it still owned
18 Alipay.

19      71.    Defendants Bartz, Bostock, Hart, James, Joshi, Kern, Smith, Wilson, and Yang all
20 face a substantial likelihood of liability by patently failing in their duty to implement adequate
21 internal controls to monitor and protect Yahoo and its assets, including its most important assets,
22 its ownership interests in Alipay. One specific example of their failure to implement adequate
23 internal controls and protect the Company's assets is defendants Bartz, Bostock, Hart, James,
24 Joshi, Kern, Smith, Wilson, and Yang's troubling decision to only appoint one director to the
25 board of directors of Alibaba. As *The Wall Street Journal* reported on May 31, 2011, Yahoo had
26 the option of placing two board members of Alibaba's board, stating: "Yahoo might have been
27 better informed had it filled the second seat on Alibaba's board to which it was entitled.... Two
28 seats would give you more attention paid." This failure to take advantage of a key monitoring

- 20 -

1 and decision making role concerning Yahoo's most valuable asset represents a complete
2 abdication of fiduciary duty by defendants Bartz, Bostock, Hart, James, Joshi, Kern, Smith,
3 Wilson, and Yang. Defendant Bartz, Bostock, Hart, James, Joshi, Kern, Smith, Wilson, and
4 Yang's failure significantly harmed Yahoo when defendant Ma transferred Alipay to himself for
5 a patently inadequate amount. According, demand upon defendants Bartz, Bostock, Hart, James,
6 Joshi, Kern, Smith, Wilson, and Yang is futile.

7 72. Defendants Bartz, Bostock, Hart, James, Joshi, Kern, Smith, Wilson, and Yang
8 also face a substantial likelihood of liability for making improper statements about the
9 Company's business health and prospects. In particular, since at least August 2010 through May
10 2011, Yahoo issued improper statements concerning Yahoo's investment in Alibaba and its status
11 and impact on Yahoo's business and affairs. Defendants Bartz, Bostock, Hart, James, Joshi,
12 Kern, Smith, Wilson, and Yang all made improper statements during this time because they
13 either knew or in reckless disregard for the fiduciary duties did not know that Alibaba had
14 transferred ownership to an entity controlled by defendant Ma. Further, it is undisputed that
15 since at least March 31, 2011, the Board knew about Alibaba's transfer of ownership of Alipay to
16 defendant Ma. Despite knowing about this transfer, the Board allowed Yahoo to issues its April
17 19, 2011, press release announcing its first quarter financial results without disclosing the Alipay
18 ownership transfer. Defendants Bartz, Bostock, Hart, James, Joshi, Kern, Smith, Wilson, and
19 Yang knowing complete and total disregard for their duty of candor cannot be a decision
20 protected by the business judgment rule and furthermore is in violation of their fiduciary duties
21 of loyalty. Accordingly, demand upon defendants Bartz, Bostock, Hart, James, Joshi, Kern,
22 Smith, Wilson, and Yang is futile.

23 73. Defendants Hart, James, Joshi, and Wilson, as members of the Audit Committee,
24 had additional and heightened responsibilities, including reviewing and discussing: (i) the
25 Company's earnings press releases, as well as financial information and earnings guidance
26 provided by the Company to analysts and rating agencies; and (ii) the Company's internal
27 controls. Thus, the Audit Committee was responsible for overseeing and directly participating in
28 Yahoo's financial reporting process, as well as the governance of Yahoo's financial assets,

- 21 -

including Alibaba. Nevertheless, defendants Hart, James, Joshi, and Wilson utterly failed to act in accordance with their duties. Defendants Hart, James, Joshi, and Wilson each reviewed and approved the improper public statements concerning the Company's business health and prospects. The most blatant example of defendants Hart, James, Joshi, and Wilson's failure to abide by their duties is their review and approval of the April 19, 2011, press release announcing the Company's first quarter 2011 financial results, which made no mention of the Alipay ownership transfer. In addition, defendants Hart, James, Joshi, and Wilson, as members of the Audit Committee, utterly failed to maintain adequate internal controls over Yahoo's most valuable asset and participated in the preparation of improper financial statements and earnings press releases that contained false and/or misleading material information about this asset. Accordingly, defendants Hart, James, Joshi, and Wilson face a substantial likelihood of liability, creating a reasonable doubt that making a demand upon them would have been futile.

74. Any suit by the current directors of Yahoo to remedy these wrongs would likely expose the Yahoo Defendants to further violations of the securities laws that would result in civil actions being filed against one or more of the Yahoo Defendants, and thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves.

75. Yahoo has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Yahoo Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Yahoo any part of the damages Yahoo suffered and will suffer thereby.

76. If the current directors were to bring this derivative action against themselves, they would thereby expose their own misconduct, which underlies allegations against them contained in class action complaints for violations of securities law, which admissions would impair their defense of the class actions and greatly increase the probability of their personal liability in the class actions, in an amount likely to be in excess of any insurance coverage available to the Yahoo Defendants. In essence, they would be forced to take positions contrary to the defenses they will likely assert in the securities class actions. This they will not do. Thus, demand is futile.

77. If Yahoo's current and past officers and directors are protected against personal liability for their acts of mismanagement, and breach of fiduciary duty alleged in this Complaint by directors and officers' liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds, i.e., monies belonging to the stockholders of Yahoo. However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, the directors' and officers' liability insurance policies covering the defendants in this case contain provisions that eliminate coverage for any action brought directly by Yahoo against these defendants, known as, inter alia, the "insured versus insured exclusion." As a result, if these directors were to sue themselves or certain of the officers of Yahoo, there would be no directors and officers' insurance protection and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery. If there is no directors and officers' liability insurance at all, then the current directors will not cause Yahoo to sue them, since they will face a large uninsured liability.

## COUNT I

### Against the Yahoo Defendants for Breach of Fiduciary Duty

78. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

79. The Yahoo Defendants, owed and owe Yahoo fiduciary obligations. By reason of their fiduciary relationships, the Yahoo Defendants owed and owe Yahoo the highest obligation of good faith, fair dealing, loyalty, and due care.

80. The Yahoo Defendants and each of them, violated and breached their fiduciary duties of, care candor, good faith, and loyalty. More specifically, the Yahoo Defendants violated their duty of good faith by consciously failing to prevent to Company from engaging in the unlawful acts complained of herein.

81. The Officer Defendants either knew, were reckless, or were grossly negligent in failing to protect Yahoo's most valuable asset, Alibaba, including by failing to implement adequate internal controls to monitor and secure Alibaba's assets. Further, the Officer

Defendants either knew, were reckless is not knowing, or were grossly negligence in cause Yahoo to make improper statements about Yahoo's business and affairs that failed to disclose that Alipay was no longer part of Alibaba.

82. The Director Defendants, as directors of the Company, owed Yahoo the highest duty of loyalty. These defendants breached their duty of loyalty by recklessly permitting the improper activity concerning the transfer of Alipay to defendant Ma. The Director Defendants either knew or were reckless in not knowing that Ma transferred Alipay to himself and caused Yahoo to make improper statements regarding Yahoo's business that failed to reveal this fact. The Director Defendants also breached their duty to implement an internal controls system to protect Yahoo's most valuable asset – its investment in Alibaba – from known and/or reasonably anticipated risks of loss, including the misappropriation of Alibaba's assets by Ma. The Director Defendants' failures to implement internal controls were conscious, and contrary to their duty to act. Accordingly, the Director Defendants breached their duty of loyalty to the Company.

83. The Audit Committee Defendants, defendants Hart, James, Joshi, and Wilson, breached their fiduciary duty of loyalty by approving the statements described herein which were made during their tenure on the Audit Committee, which they knew or were reckless in not knowing contained improper statements and omissions. The Audit Committee Defendants completely and utterly failed in their duty of oversight, and defendants Hart, James, Joshi, and Wilson failed in their duty to appropriately review financial results, as required by the Audit Committee Charter in effect at the time.

84. As a direct and proximate result of the Yahoo Defendants' breaches of their fiduciary obligations, Yahoo has sustained significant damages, as alleged herein. As a result of the misconduct alleged herein, these defendants are liable to the Company.

85. Plaintiff, on behalf of Yahoo, has no adequate remedy at law.

## COUNT II

### Against the Yahoo Defendants for Waste of Corporate Assets

86. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1    87.    As a result of the Yahoo Defendants failure to conduct proper supervision, Yahoo
2  has wasted its assets by paying improper compensation and bonuses to certain of its executive
3  officers and directors that breached their fiduciary duty.

4    88.    As a result of the waste of corporate assets, the Yahoo Defendants are liable to the
5  Company.

6    89.    Plaintiff, on behalf of Yahoo, has no adequate remedy at law.

7                                    **COUNT III**

8                **Against the Individual Defendants for Unjust Enrichment**

9    90.    Plaintiff incorporates by reference and realleges each and every allegation
10  contained above, as though fully set forth herein.

11    91.    By their wrongful acts and omissions, the Individual Defendants were unjustly
12  enriched at the expense of and to the detriment of Yahoo. The Yahoo Defendants were unjustly
13  enriched as a result of the compensation and director remuneration they received while breaching
14  fiduciary duties owed to Yahoo.

15    92.    Defendant Ma was unjustly enriched because he caused Alibaba's ownership of
16  Alipay to be transferred to another private Company that Ma controls. This transfer impaired
17  Yahoo's investment in Alibaba and constitutes misappropriation of corporate assets.

18    93.    Plaintiff, as a shareholder and representative of Yahoo, seeks restitution from
19  these defendants, and each of them, and seeks an order of this Court disgorging all profits,
20  benefits, and other compensation obtained by these defendants, and each of them, from their
21  wrongful conduct and fiduciary breaches.

22    94.    Plaintiff, on behalf of Yahoo, has no adequate remedy at law.

23                                **PRAYER FOR RELIEF**

24    WHEREFORE, plaintiff, on behalf of Yahoo, demands judgment as follows:

25    A.    Against all of the defendants and in favor of the Company for the amount of
26  damages sustained by the Company as a result of the defendants' breaches of fiduciary duties,
27  waste of corporate assets, and unjust enrichment;

28

B.     Directing Yahoo to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Yahoo and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote, resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote of the following Corporate Governance Policies:

1.     a proposal to strengthen the Company's controls over reporting of the Company's business health and prospects, including its relationship and business dealings with Alibaba;

2.     a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

3.     a provision to permit the shareholders of Yahoo to nominate at least three candidates for election to the Board; and

4.     a proposal to strengthen Yahoo's oversight of its disclosure procedures;

C.     Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Yahoo has an effective remedy;

D.     Awarding to Yahoo restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

E.     Ordering the transfer of ownership of Alipay back to Alibaba from defendant Ma;

F.     Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

G.     Granting such other and further relief as the Court deems just and proper.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 5, 2011

ROBBINS UMEDA LLP
BRIAN J. ROBBINS
CRAIG W. SMITH
SHANE P. SANDERS
GINA STASSI

_____
BRIAN J. ROBBINS

600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
brobbins@robbinsumeda.com
gsmith@robbinsumeda.com
ssanders@robbinsumeda.com
gstassi@robbinsumeda.com

Attorneys for Plaintiff

625544

- 27 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

<u>VERIFICATION</u>

I, Christina Carroll, hereby declare as follows:

I am counsel for Iron Workers Mid-South Pension Fund, a shareholder of Yahoo! Inc. Iron Workers Mid-South Pension Fund has been a shareholder continuously since June 8, 2010. Iron Workers Mid-South Pension Fund has retained competent counsel and is ready, willing, and able to pursue its action vigorously on behalf of the Company. I have reviewed the Verified Shareholder Derivative Company for Breach of Fiduciary Duty, Unjust Enrichment, Waste of Corporate Assets, and Violations of California Corporations Code (the "Complaint"). Based upon discussions with and reliance upon my counsel, and as to those facts of which I have personal knowledge, the Complaint is true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Signed and Accepted:

Dated: 7/5/11

CHRISTINA CARROLL